UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

KENNETH VINES, JR.,

        Plaintiff,

  v.

UNITED STATES OF AMERICA,

        Defendants.

NO. 2:05-cv-02370-FCD-GGH

MEMORANDUM AND ORDER

----oo0oo----

Plaintiff Kenneth Vines, Jr. ("plaintiff") brings this medical malpractice action against defendant United States of America ("defendant"). Plaintiff moves for partial summary judgment on the issue of liability. Defendant moves for summary judgment on all of plaintiff's claims, or alternatively, on the issue of damages. The court heard oral argument on the motions on September 19, 2008. For the reasons set forth below, plaintiff's motion is DENIED, and defendant's motion is GRANTED in part and DENIED in part.

/////

/////

1

## BACKGROUND[1]

On October 26, 2005, plaintiff filed this medical malpractice complaint in Shasta County Superior Court against Thomas M. Keller, M.D., and the United States Department of Veterans Affairs, alleging that defendants negligently left an object in plaintiff's back during the 1999 surgery. (DRUF ¶ 1.) Plaintiff is seeking damages solely for the "emotional upset of having a foreign object in [his] back." (Decl. of Kenneth William Vines, Jr. in Opp'n to Def.'s Mot. for Summ. J. ("Vines Decl.") [Docket # 65], filed Sept. 5, 2008, ¶ 6.) The United States of America substituted itself as the defendant in place of its employee, Dr. Keller, and removed the case to this court. (DRUF ¶ 2.) The government has defended this medical malpractice lawsuit as an action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80, and denies that it was negligent. (DRUF ¶ 3.)

/////

---

[1] Unless otherwise noted, the court finds the following facts undisputed. (Def.'s Resp. to Pl.'s Separate Stmt. of Undisputed Facts ("DRUF"), filed Sep. 8, 2008; Def.'s Resp. to Pl.'s Separate Stmt. of Undisputed Facts in Opp. To Def.'s Motion for Summary Judgment ("DRUFO"), filed Sep. 12, 2008; Pl.'s Response to Def.'s Separate Stmt. of Undisputed Facts ("PRUF"), filed Sep. 5, 2008.) Where the facts are disputed, the court recounts both parties' versions of the facts. (Pl.'s Separate Stmt. of Undisputed Facts ("PUF"), filed Aug. 19, 2008; Def.'s Separate Stmt. of Undisputed Facts ("DUF"), filed Aug. 13, 2008.) Where the facts set forth by the parties in their statements are not supported by the underlying evidence, the court looks directly to the underlying evidence.

Plaintiff objects to Defendant's Response to Plaintiff's Separate Statement of Undisputed Facts as untimely pursuant to Fed. R. Civ. P. 56. Although defendant filed its response one business day later than required, all supporting evidence was submitted on time and plaintiff has not argued that he is prejudiced by the late response. As such, the court will consider Defendant's Response to Plaintiff's Separate Statement of Undisputed Facts.

1    Plaintiff has had multiple back surgeries for persistent
2 lower back pain.  (DRUF ¶¶ 4, 8; Decl. of Stephen L. Skirboll,
3 M.D., in Supp. of Def.'s Mot. for Summ. J. ("Skirboll Decl.")
4 [Docket #54-2], filed Aug. 13, 2008.)  Specifically, three
5 doctors have operated on plaintiff: Dr. James D. Tate, in 1993,
6 Dr. Thomas Keller, in 1999, and Dr. Stephen Skirboll, in 2004.
7 (Id.)  Each successive surgery progressed up plaintiff's spine;
8 the 1993 surgery was located in the L5-S1 region, the 1999
9 surgery in the L4-L5 region, and the 2004 surgery in the L3-L4
10 region.  (Id.)  In 2002, x-rays were taken that revealed the
11 presence of a small wire in the S1 region of plaintiff's spine.
12 (DRUF ¶ 16.)

13    On October 12, 1993, Dr. Tate performed a discectomy on
14 plaintiff's lower back at the L5-S1 levels.  (DRUF ¶ 4.)  Five
15 weeks after the 1993 operation, Dr. Marc Griffey, a radiologist,
16 took MRI films of plaintiff's lower back.  (Griffey MRI Report,
17 Ex. B to Decl. of Marc C. Barulich in Supp. of Pl.'s Mot. Partial
18 Summ. J. ("Barulich Supp. Decl.") [Docket # 59], filed Aug. 19,
19 2008.)  Although the MRI films are not before the court,
20 plaintiff offers Dr. Griffey's MRI Report as evidence that the
21 MRI film did not show the embedded wire.  Id.  The MRI Report
22 does not note the presence of any foreign objects on the film.
23 Dr. Griffey testified that "if there was a foreign object on the
24 film . . . [he] would have commented on it in the report."  (Dep.
25 of Marc Griffey, M.D. ("Griffey Dep."), Ex. B. to Decl. of Marc
26 C. Barulich in Opp'n to Def.'s Mot. for Summ. J. ("Barulich Opp'n
27 Decl.") [Docket # 66], filed Sept. 5, 2008, at 9:5-7.)  Dr.
28

1  Griffey further testified that the MRI used would have detected a
2  metal object unless it was "very tiny." (Id. at 13:12-25.)
3      Although plaintiff's back pain abated for several years
4  following the 1993 surgery, it began to return in the late
5  1990's.  To determine the cause of his pain, plaintiff underwent
6  a lumbar MRI on February 25, 1999. (DRUF ¶ 7.) Although the
7  film from this MRI was lost, plaintiff offers the MRI Report of
8  Dr. Robert J. Liebig to prove that the MRI did not show the
9  embedded wire.  However, Dr. Liebig's report notes "post-surgical
10 changes." (Liebig MRI Report, Ex. C to Barulich Supp. Decl.)
11 Dr. Liebig later clarified the term "post-surgical changes" by
12 reference to a 2002 x-ray that clearly shows the wire in
13 plaintiff's back:
14     Q.   [Plaintiff's counsel] In the 2002 films that you saw,
15          did you see a lengthy, curly wire in those films of Mr.
16          Vines' lumbar spine?
17     A.   [Dr. Liebig] Yes.
18     Q.   If that wire that you observed in those films was
19          present in [the February 25, 1999 MRI], would you have
20          referred to it as a post-surgical change?
21     A.   Yes.
22     Q.   Without describing it?
23     A.   Yes.
24     Q.   And why is that?
25     A.   Because it was completely away from anything of any
26          significance.

1  (Dep. of Robert J. Liebig, M.D. ("Liebig Dep."), Ex. K to Def.'s
2  Reply to Pl.'s Opp'n ("Def.'s Reply") [Docket # 71], filed Sept.
3  12, 2008, at 30:22-25, 31:1-9.)
4       On April 21, 1999, Dr. Keller performed a microdiscectomy on
5  plaintiff at the L4-L5 level.  (Dep. of Thomas Keller, M.D.
6  ("Keller Dep."), Ex. L to Def.'s Reply, at 20:10-13.)  Although
7  the surgery was conducted several centimeters away from where the
8  object was eventually located, Dr. Keller stated that he could
9  "visualize" the S1 region.  (DRUFO 25.)  As such, plaintiff
10 asserts that Dr. Keller had access to the S1 region during
11 surgery.  Further, plaintiff asserts that Dr. Keller and his
12 surgery team were the only individuals who had access to the S1
13 region of plaintiff's back over the period of time when the
14 object appeared.
15      Plaintiff contends that the expert testimony of Dr. William
16 K. Hoddick supports the proposition that defendant left the
17 object in plaintiff's back.  (PUF ¶ 13.)  However, Dr. Hoddick
18 testified that the object resulted from the 1993 surgery, and
19 that Dr. Keller never had control over the retained object.
20 (Dep. of William K. Hoddick, M.D. ("Hoddick Dep."), Ex. N to
21 Def.'s Reply, at 24:2-11.)  Dr. Hoddick further explained that
22 the object may have failed to appear on the 1993 MRI due to the
23 unreliability of MRI imaging as a means of detecting metallic
24 objects.  (Id. at 28:20-29:11.)

**STANDARD**

26    The Federal Rules of Civil Procedure provide for summary
27 judgment where "the pleadings, depositions, answers to
28 interrogatories, and admissions on file, together with the

5

affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**ANALYSIS**

Plaintiff brings this medical malpractice claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA").  In adjudicating actions brought under the FTCA, the court applies the substantive law of the state where the negligent act or omission occurred.  Richards v. United States, 369 U.S. 1, 11 (1962).  Since the 1999 surgery occurred in California, California's substantive law applies to this case.  (DRUF ¶ 8.)

**A.   Evidentiary Issues**

Defendant contends that plaintiff cannot rely upon any expert testimony because he has failed to comply with the applicable rules relating to the disclosure of medical experts and the accompanying submission of expert reports.  Plaintiff did not comply with the court's Scheduling Order or Federal Rule of Civil Procedure 26(a)(2)(B) in designating expert witnesses.  (PRUF ¶ 11.)  While this precludes him from calling any expert witnesses at trial, he may still call his treating physicians.  Shapardon v. West Beach Estates, 172 F.R.D. 415, 416-17 (D. Haw. 1997).  A treating physician's testimony is limited to addressing the causation, diagnosis, prognosis, and extent of disability caused by an injury.  Id.  "Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirement of Rule 26(a)(2)(B)."  Id.  However, a treating physician must base his opinion on information acquired from his direct treatment of the plaintiff, and may not rely on information acquired from outside sources.  Id. at 417.  Because plaintiff failed to comply with

7

Rule 26, his witnesses are limited to testifying in their capacity as treating physicians.

Plaintiff also contends that in deciding the motions, the court should take into account alleged misconduct relating to the production of evidence by defendant. Plaintiff argues that defendant "misplaced, lost, [stole] or simply withheld" all MRI films taken prior to the 1999 surgery. The court does not take such accusations lightly. The single piece of proof offered by plaintiff in support of this accusation is his own declaration. However, the declaration indicates that plaintiff delivered only his medical records from the 1999 surgery to defendant. (Vines Decl. ¶¶ 5, 5.[2]) There is no evidence that plaintiff submitted records to defendant that included any MRI film from either 1993 or 1999. (Id.) Further, Angela Benzo Norman, a Senior Attorney in the Office of the Regional Counsel for the United States Department of Veterans Affairs, filed a declaration denying plaintiff's accusations and stating that defendant is not in possession of either the print or electronic MRI films. Accordingly, plaintiff's accusations of misconduct are unfounded and are not well taken.

**B.   *Res Ipsa Loquitur***

Plaintiff does not point to a specific act of negligence in his claim, but invokes the doctrine of *res ipsa loquitur*. The doctrine of *res ipsa loquitur* addresses those kinds of accidents that are "so likely to have been caused by the defendant's negligence that one may fairly say 'the thing speaks for

---

[2] Plaintiff's declaration contains two paragraphs numbered "5."

8

1  itself.'"  Brown v. Poway, 4 Cal. 4th 820, 825 (1993).  The
2  doctrine exists to assist the courts in determining when
3  circumstantial evidence of negligence is sufficient.  Id.
4      Defendant contends that plaintiff's invocation of *res ipsa*
5  *loquitur* gives rise to a "wholly distinct and different" cause of
6  action than the general negligence claim originally pled by
7  plaintiff in his complaint.  (Def.'s Opp'n to Pl.'s Motion for
8  Partial Summary Judgment ("Def.'s Opp'n"), filed Sept. 2, 2008,
9  at 7.)  Defendant argues that plaintiff cannot invoke *res ipsa*
10 *loquitur* without filing an amended complaint and that such an
11 amendment should not be permitted.  (Id.)
12     However, the doctrine of *res ipsa loquitur* is not a basis
13 for relief, but rather, is defined by statute as "a presumption
14 affecting the burden of producing evidence."  (Cal. Evid. Code §
15 646(B).); see Rietcheck v. City of Arlington, No. 04 Civ. 1239,
16 2006 WL 1371650 (D. Or. May 15, 2006) ("[A] rule of evidence
17 should not be pleaded in a claim for relief.").  As such,
18 plaintiff can argue this theory without filing an amended
19 complaint.
20     A plaintiff must prove three elements to invoke the
21 presumption of negligence provided for by *res ipsa loquitur*: "(1)
22 the accident must be of a kind which ordinarily does not occur in
23 the absence of someone's negligence; (2) it must be caused by an
24 agency or instrumentality within the exclusive control of the
25 defendant; (3) it must not have been due to any voluntary action
26 or contribution on the part of the plaintiff."  Ybarra v.
27 Spangard, 25 Cal. 2d 486, 489 (1944).
28 /////

**C.   Exclusive Control**[3]

Defendant contends that plaintiff cannot establish the exclusive control element of *res ipsa loquitur*. Exclusivity of control is a flexible concept, and serves "to link the defendant with the probability, already established, that the accident was negligently caused." Newing v. Cheatham, 15 Cal. 3d 351, 362 (1975). "Although . . . the doctrine will not ordinarily apply if it is equally probable that the negligence was that of someone other than the defendant, the plaintiff need not exclude all other persons who might possibly have been responsible where the defendant's negligence appears to be the more probable explanation of the accident." Zentz v. Coca Cola Bottling Co. of Fresno, 39 Cal. 2d 436, 443-44 (1952).

Plaintiff has submitted evidence of several facts that could support a finding of exclusive control. First, plaintiff presents evidence that the object did not appear in an MRI taken five weeks after the 1993 surgery, but appeared in x-ray images taken after the 1999 surgery. (DRUF ¶¶ 6, 16.) Testimony from his treating physician, Dr. Griffey, indicates that the object would have appeared in the 1993 MRI if it was in plaintiff's back at that time. (PUF ¶ 15.) Between the 1993 MRI and 2002 x-rays,

---

[3] Defendant does not allege that plaintiff's injury could have occurred absent negligence or that plaintiff contributed to his own injury. Although defendant maintains that it met the applicable standard of care, defendant's expert witnesses base this conclusion on evidence that "the object is not attributable to the 1999 surgery" and that "there is a lack of proof connecting the object to the 1999 surgery." (Def.'s Motion for Summ. J. ("Def.'s Mot."), filed Aug. 13, 2008, at 11-12.) This argument is essentially a repackaging of defendant's argument on exclusive control. Accordingly, the court limits its discussion to the "exclusive control" element of *res ipsa loquitur*.

10

1  Dr. Keller was the only surgeon to operate on plaintiff's back.
2  (Def.'s Mot. at 3.)  Dr. Keller was able to "visualize" the S1
3  region of plaintiff's back during the 1999 surgery but did not
4  see any foreign objects.  (DRUFO ¶¶ 25, 26.)  In 2002, an x-ray
5  revealed a foreign object at the S1 level of plaintiff's spine.
6  (DRUF ¶ 14.)  Taken together, these facts may support a finding
7  that only defendant could have left the object in plaintiff's
8  back.

9  In response, defendant presents evidence explaining the
10 absence of the object on the 1993 MRI and rebutting the assertion
11 that defendant had access to the S1 region during surgery.
12 Defendant presents expert testimony that while the 1993 MRI could
13 have failed to detect the object, a MRI taken two months before
14 the 1999 surgery might have shown the object in plaintiff's back.
15 (DRUF ¶¶ 6, 7.)  The object is located at the site of the 1993
16 surgery, and is located several centimeters away from the site of
17 the 1999 surgery.[4]  (Hoddick Dep. at 46:1-14.)  The object has
18 not changed in size, location, or orientation since the 1999
19 surgery.  (DRUF ¶ 18.)  Defendant did not have access to the
20 region of plaintiff's back where the object was later detected,
21 nor did defendant use any surgical objects containing wire parts
22 similar to the wire found in plaintiff's back.  (DRUFO ¶¶ 5, 24;
23 Keller Dep. at 67:3-20.)  While defendant accounted for all
24 foreign objects used in the 1999 surgery, none of the instruments
25 used in the 1993 surgery were accounted for following surgery.
26 (DRUF ¶¶ 5, 11.)  Finally, defendant's expert witness – the only

---

28  [4] Dr. Hoddick testified that "in this kind of surgery, centimeters are anatomic miles."  (Hoddick Dep. at 46:12-13.)

11

expert witness in the case – opines that the object resulted from the 1993 surgery. (DRUF ¶ 13.)

In light of the conflicting evidence regarding whether the object was in plaintiff's back prior to the 1999 surgery, a triable issue of material fact exists on the element of exclusive control.

**D.  Causation**

Defendant contends that even if plaintiff can present sufficient evidence to support liability on a theory of *res ipsa loquitur*, plaintiff must also present evidence regarding the causation and damages elements of his negligence claim. Specifically, defendant asserts that plaintiff has failed to present any evidence that the object in plaintiff's back is the source of any physical pain.

"Although an inference of negligence arises when the doctrine is properly applied, it does not eliminate the need to show the other elements of actionable negligence, especially the fact that the injury was proximately caused by the negligence thus inferred." Deckard v. Sorenson, 177 Cal. App. 2d 305, 308-09 (1960). Expert testimony is not required to establish emotional distress; lay opinion alone can be sufficient. See Godfrey v. Steinpress, 128 Cal. App. 3d 154, 186 (1982)

Contrary to defendant's assertions, plaintiff is not seeking damages for pain. Rather, he has limited his damages claim "to the emotional upset of having a foreign object in [his] back." (Vines Decl. ¶ 6.) As such, plaintiff does not need to present expert testimony to support this theory of recovery.

1    The instant case is distinguishable from cases in which
2 expert testimony was required to identify the source of pain.
3 See Deckard, 177 Cal. App. 2d at 306.  In Deckard, the plaintiff
4 fractured her right leg in a car accident.  Id.  The plaintiff
5 invoked the doctrine of *res ipsa loquitur* after the defendant
6 doctor mistakenly placed the wrong leg in a cast, and testified
7 at trial that she "experienced stiffness of her right knee and
8 some limitation of motion" as a result of the defendant's
9 negligence.  Id. at 306-07.  However, an expert witness testified
10 that the defendant's negligence was not the proximate cause of
11 the plaintiff's stiffness and limited motion.  Because such
12 analysis of causation required specialized knowledge, the court
13 granted a nonsuit based on the plaintiff's failure to produce
14 expert testimony.  Id. at 306.

15    Because the issue of whether the knowledge that a there is a
16 foreign object in his back caused plaintiff's "emotional upset"
17 does not necessarily require specialized knowledge, plaintiff has
18 presented sufficient evidence to raise a triable issue of fact
19 regarding causation and damages.  Therefore, defendant's motion
20 for summary judgment regarding plaintiff's claims for damages
21 regarding the emotional upset caused by the knowledge of the
22 object in his back is DENIED.  However, to the extent plaintiff
23 seeks damages arising out of physical pain or suffering caused by
24 the object in his back, such analysis of causation and damages
25 would require expert testimony, which plaintiff has not
26 presented.  Therefore, defendant's motion for summary judgment
27 regarding plaintiff's claims for damages arising out of any
28 physical pain or suffering is GRANTED.

13

**CONCLUSION**

For the foregoing reasons, defendant's motion for partial summary judgment on the issue of damages is GRANTED in part; plaintiff is limited to damages for "emotional upset" only. In all other respects, defendant's motion for summary judgment is DENIED. Plaintiff's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

DATED: October 2, 2008

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE